UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -:

RUBEN CLAUDIO,                        :   15 Civ. 9847 (GBD) (JCF)
                                      :
            Plaintiff,                :        REPORT AND
                                      :      RECOMMENDATION
    - against -                       :
                                      :
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
            Defendant.                :
- - - - - - - - - - - - - - - - - -:

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 12/13/16             │
└─────────────────────────────────┘
```

    Ruben Claudio, proceeding pro se, brings this action pursuant

to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), seeking review of a determination by the Acting

Commissioner of Social Security (the "Commissioner") that Mr.

Claudio is not entitled to Supplemental Security Income benefits

("SSI").  The Commissioner has filed a motion for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, which the plaintiff did not oppose.  Because the

Commissioner's decision is supported by substantial evidence, I

recommend that the motion be granted.

Background

    A.   Personal and Vocational History

    Mr. Claudio was born on September 24, 1986, and filed his

application for SSI on April 12, 2013, when he was twenty-six years

old.  (R. at 81).  He has an eleventh grade education and recently

completed a nine-month vocational training program in decorative

painting sponsored by Vocational and Educational Services for Individuals with Disabilities ("VESID"). (R. at 22-23). Mr. Claudio has not held a job for any substantial period within the last fifteen years; his employment history includes two brief stints with two community-based organizations during the summers of 2007 and 2009. (R. at 24, 171). Most recently, he worked from July 2012 to August 15, 2012, as a kitchen assistant at the shelter where he had been living. (R. at 24, 111). Once Mr. Claudio moved out on August 15, 2012, he was no longer allowed to work at the shelter. (R. at 109).

Mr. Claudio lives alone in a New York City apartment. (R. at 121). He takes care of a dog and prepares his own meals, though he alleges that he is limited to cooking simple meals such as eggs, as he becomes fatigued from standing over the stove for an extended period because he is HIV-positive.[1] (R. at 122-23). He purchases groceries and other supplies once every two weeks with assistance. (R. at 125). The plaintiff claims that his condition limits his ability to walk for long distances and to sit or stand for a

---

[1] "HIV destroys CD4 cells -- a specific type of white blood cell that plays a large role in helping your body fight disease. Your immune system weakens as more CD4 cells are killed. You can have an HIV infection for years before it progresses to AIDS." HIV/AID Causes, Mayo Clinic (July 21, 2015), http://www.mayoclinic.org/diseases-conditions/hiv-aids/basics/causes/con-20013732.

sustained period.  (R. at 125).  He alleges that his HIV medication makes him forgetful but he is able to follow written instructions. (R. at 128).

    B.   <u>Medical History</u>

       1.   <u>Medical History Prior to April 12, 2013</u>

Mr. Claudio was treated in 2002 and 2004 at Mount Sinai Hospital for depression and has been to mental health outpatient centers on and off since the age of fourteen.  (R. at 222).  He was hospitalized twice for suicidal thoughts, although he "had no plan" to act on them.  (R. at 222).  He has a family history of schizophrenia and depression, and his father has a history of alcoholism.  (R. at 223).

Mr. Claudio visited the Riverside Health Center on January 20, 2010, where he tested positive for human immunodeficiency virus antibodies; he was confirmed HIV-positive on January 28, 2010. (R. at 209, 239).  Mr. Claudio has since been receiving treatment for HIV primarily from Dr. Josephine Paredes.  (R. at 113).  The plaintiff was prescribed the anti-retroviral medication Atripla for his HIV, which he continues to take daily.  (R. at 169).  Mr. Claudio has routine checkups that involve both a CD4 level test and viral load test to monitor the progression of his HIV.[2]  (R.

---

     [2]  Regarding CD4 levels, the Code of Federal Regulations states:

at 237).   Mr. Claudio had three CD4 and viral load tests during the period from November 15, 2011, through July 16, 2012, which confirmed that he had a CD4 level within the healthy range[3] and an undetectable viral load.   (R. at 237, 240).

    2.   <u>Evidence from April 12, 2013, to August 6, 2014</u>

On January 9, 2013, Mr. Claudio's CD4 level remained within the healthy range at 704, and his viral load remained undetectable. (R. at 239).

On February 4, 2013, the plaintiff saw Dr. Nipa Gandhi at St. Luke's Hospital for an examination.   (R. at 214).   Dr. Gandhi diagnosed him with an anal fistula, for which Mr. Claudio underwent anorectal surgery on April 1, 2013.   (R. at 210-12).

---

Individuals who have HIV infection or other disorders of the immune system may have tests showing a reduction of either the absolute count or the percentage of their T-helper lymphocytes (CD4 cells).   The extent of immune suppression correlates with the level or rate of decline of the CD4 count.   Generally, when the CD4 count is below 200 [cells/mm] (or below 14 percent of the total lymphocyte count) the susceptibility to opportunistic infection is greatly increased.   Although a reduced CD4 count alone does not establish a definitive diagnosis of HIV infection, a CD4 count below 200 does offer supportive evidence when there are clinical findings, but not a definitive diagnosis of an opportunistic infection(s).   However, a reduced CD4 count alone does not document the severity or functional consequences of HIV infection.

20 C.F.R. § 404, subpart P, app. 1, § 14.00(F)(2).

   [3]   On November 15, 2011, the claimant's CD4 level was 735, on March 2, 2012, it was 664, and on July 16, 2012, it was 687.   (R. at 237, 240).

On May 15, 2013, Mr. Claudio was referred by the New York State Division of Disability Determination to Dr. Sharon Revan for an examination. (R. at 218). Dr. Revan noted that the plaintiff had been diagnosed with HIV in January 2010, that his viral load was undetectable, and that he did not know his CD4 count. (R. at 218). He had not experienced any nausea, vomiting, constipation, diarrhea, bleeding, bruising, or anemia, but he complained of weakness and fatigue. (R. at 218). While he had no problems sitting, lying down, standing, or climbing stairs, he reported feeling tired and short of breath after walking more than six or seven blocks. (R. at 218). He also reported lower abdominal pain on palpation. (R. at 219). Mr. Claudio stated that he showered, dressed himself, cooked, cleaned, and did his own shopping. (R. at 218). Dr. Revan observed no acute distress, noting that the plaintiff was able to squat fully, had a normal stance and gait, did not require any assistance changing or getting on and off the exam table, and was able to rise from a sitting position without difficulty. (R. at 219). Dr. Revan opined that Mr. Claudio was mildly limited in climbing stairs due to fatigue and shortness of breath; otherwise, he had no limitations of speech, vision, hearing, or fine and gross motor activity of the upper extremities. (R. at 220).

The same day, Mr. Claudio also saw Dr. Arlene Broska for a consultative psychiatric evaluation. (R. at 222). Dr. Broska

noted that the plaintiff was well groomed, had normal posture and motor behavior, and maintained appropriate eye contact throughout the exam. (R. at 223). She observed that Mr. Claudio had adequate attention and concentration, a coherent thought process, and adequate cognitive functioning. (R. at 224). Mr. Claudio reported often having dysphoria, feeling hopeless, and having no energy. (R. at 222). Mr. Claudio told Dr. Broska that he becomes anxious in large crowds and thinks people are talking about him or staring. (R. at 222). The plaintiff stated that he wakes up twice per night "thinking," and Dr. Broska noted that he had lost some weight. (R. at 222).

Dr. Broska found "no evidence of limitation in [Mr. Claudio's] ability to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, learn new tasks, and maintain a regular schedule." (R. at 224). Dr. Broska found evidence of "mild to moderate limitation in his ability to relate adequately with others and appropriately deal with stress." (R. at 224). Dr. Revan recommended psychiatric intervention. (R. at 225).

On May 31, 2013, Mr. Claudio's CD4 level remained in the healthy range at 757, and his viral load was again undetectable. (R. at 237).

On June 11, 2013, Dr. V. Reddy, a state agency psychologist, completed a psychiatric review of Mr. Claudio. (R. at 32). Dr. Reddy concluded that the plaintiff's affective disorder did cause him "mild" difficulties in maintaining social functioning. (R. at 32). Dr. Reddy found, however, that this did not result in any restriction to activities of daily living, difficulties maintaining concentration, persistence or pace, or periods of extended decompensation. (R. at 32). Dr. Reddy concluded that Mr. Claudio's affective disorder was non-severe. (R. at 32).

On July 8, 2013, Dr. Paredes completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" for Mr. Claudio. (R. at 230). Dr. Paredes opined that Mr. Claudio could carry up to twenty pounds continuously, fifty pounds frequently, and one hundred pounds occasionally. (R. at 230). She determined the plaintiff could sit for four hours at one time and for six hours cumulatively in an eight-hour workday. (R. at 231). Dr. Paredes found that Mr. Claudio could stand or walk for two hours uninterrupted and for three hours total over the course of an eight-hour workday. (R. at 231). He concluded that Mr. Claudio could frequently climb stairs and ramps but could only occasionally climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. (R. at 234). Dr. Paredes found that the plaintiff could use his hands or feet "continuously." (R. at 232). Dr. Paredes also concluded that Mr. Claudio had no limitations on

activities such as shopping, cooking, traveling without assistance, walking at a reasonable pace or on an uneven surface, handling paperwork, or caring for personal hygiene. (R. at 233).

On July 18, 2013, Grissel Hernandez, a psychiatric nurse practitioner, completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" for Mr. Claudio. (R. at 226). Ms. Hernandez found that the plaintiff's impairment did not affect his ability to understand, remember, or carry out simple instructions, but it caused mild restrictions on both his ability to make judgments on simple work-related decisions and on his ability to understand and remember complex instructions. (R. at 226). Ms. Hernandez opined that Mr. Claudio's disability placed moderate restrictions on his ability to carry out complex instructions and his ability to make judgments on complex work-related decisions. (R. at 226). She found no limitations as to the plaintiff's ability to interact appropriately with the public, supervisors, or coworkers but concluded that he had mild limitations on his ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 227).

On August 9, 2013, Mr. Claudio visited Roosevelt Hospital for treatment of a blistered, swollen lip and was treated by Dr. Abigail Zuger. (R. at 237). Dr. Zuger noted that he had no history of oral or genital herpes simplex virus, and the plaintiff reported no recent sexual contact. (R. at 237). Dr. Zuger

instructed Mr. Claudio to continue taking his Valtrex and Bactrim medications and to apply warm compresses to the area. (R. at 238). No follow-up appointment was required apart from the plaintiff's regularly scheduled visits with Dr. Paredes. (R. at 238).

On August 29, 2013, Mr. Claudio saw Dr. Paredes for a routine appointment to monitor his HIV. (R. at 239). Dr. Paredes found that the plaintiff continued to be free of HIV symptoms and that his viral load remained undetectable. (R. at 239-240). Dr. Paredes also noted that Mr. Claudio's body mass index ("BMI") of twenty-seven was "too high," and that he had gained eight pounds over the prior two months. (R. at 240). Dr. Paredes also noted that the plaintiff complained of chronic lower back pain. (R. at 239). He attributed this pain to an issue with Mr. Claudio's gait and referred him to a podiatrist. (R. at 240).

C.   Procedural History

Mr. Claudio filed his application for SSI on April 12, 2013, alleging disability due to HIV disease, Human Papillomavirus (HPV) infection, and fatigue. (R. at 8). After the Social Security Administration denied the application on June 13, 2013, Mr. Claudio requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 38, 44-45). On July 21, 2014, a hearing was held before ALJ Joseph K. Rowe. (R. at 18).

Mr. Claudio, who appeared at the hearing pro se, testified about his education and limited work experience. (R. at 22-25).

ALJ Rowe asked him what type of work he wanted, and Mr. Claudio said he was interested in art, drawing, painting, helping the elderly or children, and working at a community center.  (R. at 25).  The plaintiff indicated that he was not actively searching for work, but that there was "not really" anything keeping him from working; he further stated that were he not to pursue the appeal of his disability claim, he risked losing financial benefits from the HIV/AIDS Services Administration ("HASA").  (R. at 25).

   Mr. Claudio testified that he had received psychiatric treatment for several years but had "just kind of dropped out." (R. at 25-26).  He also testified that his HIV was under control, although he was not sure of his current HIV count.  (R. at 26). When asked about physical limitations, Mr. Claudio testified that he could sit or stand for "about 2 hours," that he had no problems bending, and that he could lift "maybe 15, 20 pounds."  (R. at 26).

   On August 6, 2014, ALJ Rowe issued a decision finding that Mr. Claudio was not disabled within the meaning of the Act since April 12, 2013.  (R. at 8-14).  On December 8, 2015, the Appeals Council denied the plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  (R. at 1). The present action followed.

Analytical Framework

    A.   Determination of Disability

    A claimant is disabled under the Act and therefore entitled to disability benefits if he can demonstrate, through medical evidence, that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Arzu v. Colvin, No. 14 Civ. 2260, 2015 WL 1475136, at *7 (S.D.N.Y. April 1, 2015).  The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

    To determine whether a claimant is entitled to disability benefits, the Commissioner employs a five-step sequential analysis.  20 C.F.R. § 416.920(a)(4).  First, the claimant must demonstrate that he is not currently engaging in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  Second, the Commissioner then determines whether the claimant has an impairment severe enough to "significantly limit[] his physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  Third, if the claimant's impairment meets or equals

one of the disabilities listed in Appendix 1 of the regulations and the duration requirement is met,[4] the claimant is found to be disabled and eligible for benefits. 20 C.F.R. § 416.920(a)(4)(iii), (d). Fourth, if the claimant is unable to make the requisite showing under step three, he must prove that he does not have the residual functional capacity to perform her past work. 20 C.F.R. § 416.920(a)(4)(iv), (e). Finally, if the claimant satisfies his burden of proof on the first four steps, the burden shifts to the Commissioner to demonstrate that there is alternative substantial gainful employment in the national economy that the claimant can perform. 20 C.F.R. §§ 416.920(a)(4)(v), (g), 416.960(c); Longbardi v. Astrue, No. 07 Civ. 5952, 2009 WL 50140, at *23 (S.D.N.Y. Jan. 7, 2009). In evaluating a claimed disability through this process, the Commissioner must consider objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and the claimant's educational background, age, and work experience. Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983).

---

[4] To meet the duration requirement the claimant's impairment must have lasted or be expected to last for a continuous period of at least twelve months, unless the impairment is expected to result in death. 20 C.F.R. § 416.909.

B.   <u>Judicial Review</u>

Section 205(g) of the Act permits a Social Security claimant to seek judicial review of the Commissioner's final determination denying the claimant's application for disability benefits. 42 U.S.C. § 405(g).   Judicial review involves two levels of inquiry.   First, the court must decide whether the Commissioner applied the correct legal standard.   <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999); <u>Calvello v. Barnhart</u>, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008).   Second, the court must decide whether the ALJ's decision was supported by substantial evidence.   <u>Tejada</u>, 167 F.3d at 773; <u>Ryan v. Astrue</u>, 5 F. Supp. 3d 493, 502 (S.D.N.Y. 2014); <u>Calvello</u>, 2008 WL 4452359, at *8.   "[T]o determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."   <u>Ryan</u>, 5 F. Supp. 3d at 502 (quoting <u>Terwilliger v. Commissioner of Social Security</u>, No. 06-CV-149, 2009 WL 2611267, at *2 (N.D.N.Y. Aug. 24, 2009)). Substantial evidence in this context is "more than a mere scintilla" -- it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).   "If substantial evidence

supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result." Ventura v. Barnhart, No. 04 Civ. 9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006).

Analysis

A.   The ALJ's Decision

ALJ Rowe analyzed the plaintiff's claim pursuant to the five-step analysis outlined above and concluded that Mr. Claudio was not disabled on or after April 12, 2013, the date he filed his application for benefits. (R. at 8-14). He first determined that Mr. Claudio had not engaged in substantial gainful activity since the date he filed his application. (R. at 10). Next, at step two, he found that Mr. Claudio had a severe impairment, HIV, causing some work-related functional limitations. (R. at 10). ALJ Rowe found that the plaintiff's depressive disorder did not qualify as a severe impairment because it did not cause more than minimal limitation in his ability to perform basic mental work activities. (R. at 10).

At step three, ALJ Rowe found that none of the plaintiff's impairments, alone or in combination, met or medically equaled the severity of any of the listed impairments, specifically, HIV or affective disorders.[5] (R. at 11). ALJ Rowe reviewed the medical

_____

[5]   While ALJ Rowe did not explicitly discuss affective disorders at step three, he made it clear that step three considers

evidence and concluded that Mr. Claudio's HIV impairment did not meet or medically equal the listed impairments because he did not have any of the necessary accompanying conditions.  (R. at 11).

ALJ Rowe found that the plaintiff maintained the residual functional capacity to perform the full range of medium work.  (R. at 12).  At step four, ALJ Rowe found that the plaintiff had no past relevant work.  (R. at 13).  At step five, considering the claimant's age, education, work experience, and residual functional capacity, ALJ Rowe found that jobs existed in significant numbers in the national economy that Mr. Claudio could perform, and he therefore was not disabled under Medical Vocational Rule 203.25, set forth at 20 C.F.R. § 404, subpart P, app. 2.  (R. at 13-14).

B.   Substantial Evidence

Substantial evidence supports ALJ Rowe's decision that Mr. Claudio was not disabled.

At step two, ALJ Rowe applied the analysis used to evaluate mental impairments, which involves evaluating the claimant's

_____

any combination of the claimant's impairments that might result in severe limitations.  (R. at 11).  Moreover, at step two of the analysis, ALJ Rowe concluded that the claimant had no limitations in any of the four functional areas used to evaluate mental impairments, which is the same analysis undertaken at step three under the Listings requirement for affective disorders -- marked limitations are required in at least two of the four functional areas for an impairment to qualify as severe.  See 20 C.F.R. § 404, subpart P, app. 1, § 12.04(A)-(C).

"pertinent signs, symptoms, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), and then rating the claimant's functional limitations in four areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation, see 20 C.F.R. § 404.1520(c)(3). A claimant's impairment is generally found not to be severe where the degree of functional limitation in the first three areas is rated as "mild" or "none" and the number of incidents of decompensation is "zero." 20 C.F.R. § 416.920a(d)(1).

ALJ Rowe's finding that Mr. Claudio had no functional limitations on activities of daily living is corroborated by substantial evidence in the record. Examination reports from the consultative examiner, Dr. Revan, and the plaintiff's treating physician, Dr. Paredes, show that Mr. Claudio reported doing his own shopping, cooking, cleaning, and traveling independently, among other activities. (R. at 218, 231).

The ALJ also found no limitations with regard to concentration, persistence, or pace, and this is also supported by substantial evidence in the record. Dr. Arlene Broska conducted a psychiatric evaluation and found that Mr. Claudio had adequate attention and concentration, a coherent thought process, and adequate cognitive functioning. (R. at 222). She opined that he had "fair" judgment and insight, as well as an "average" level of

16

cognitive functioning.  (R. at 224).  She concluded that while his results appeared consistent with psychiatric problems, it was not serious enough to interfere with his ability to function on a daily basis.  (R. at 224).  Moreover, Mr. Claudio recently completed an advanced training course in decorative painting, attending the course three days a week, nine hours a day, for roughly nine months.  (R. at 23).  There is no evidence of episodes of decompensation.

While the record is less consistent concerning the plaintiff's degree of limitation in social functioning, substantial evidence supports the ALJ's determination.  Dr. Reddy indicated that Mr. Claudio faced some "mild" limitations with social functioning (R. at 32), while Dr. Broska opined that the claimant's impairment posed "mild to moderate limitations in his ability to relate adequately with others" (R. at 224).  Dr. Broska noted that the claimant had anxiety, woke up twice per night "thinking," and did not like to be around large crowds, where he felt as though people were staring at and talking about him.  (R. at 222).  Dr. Broska reported that Mr. Claudio had a cooperative demeanor and was responsive to questions.  (R. at 223).  She also noted that he was well-groomed, made appropriate eye contact, and spoke intelligibly.  (R. at 223).  His thought process was coherent and goal-directed, and Dr. Broska observed no evidence of hallucinations or paranoia.  (R. at 223).  The plaintiff's

testimony that he would be highly interested in any job at a community center assisting children or elderly people also supports the conclusion that he was not limited as to social functioning. (R. at 25). Even if ALJ Rowe concurred that Mr. Claudio faced "mild" limitations with regard to social functioning, such a finding in the first three categories generally indicates that the impairment is non-severe, and the substantial evidence on the record supports this conclusion. See 20 C.F.R. § 416.920a(d)(1).

At step three, ALJ Rowe's finding that Mr. Claudio's symptoms did not meet or medically equal the conditions specified in the Listing for HIV was also supported by substantial evidence. (R. at 11). The Listing requires that a claimant who is HIV-positive also have a listed condition or symptom. See 20 C.F.R. § 404, subpart P, app. 1, § 14.08(A)-(K). There is nothing in the plaintiff's medical examination findings and laboratory results that indicate any of these conditions. Mr. Claudio had been seeing Dr. Paredes regularly since he was diagnosed HIV-positive in 2010, and laboratory testing had not revealed any other problems to date nor any evidence of the listed infections and conditions. (R. at 237-41). Moreover, Mr. Claudio's HIV remained asymptomatic and under control since his 2010 diagnosis, as shown by periodic CD4 and viral load tests that consistently yielded results in the healthy range. (R. at 239).

ALJ Rowe explicitly addressed only HIV at this stage of the analysis and did not mention the plaintiff's depressive disorder. (R. at 11).  However, ALJ Rowe did analyze the severity of the depressive disorder in step two, and that analysis uses the same criteria as the Listings.  See 20 C.F.R. § 404.1520a; 20 C.F.R. § 404, subpart P, app. 1, § 12.04(B).  Without marked restrictions in one, let alone two, of the four functional areas, the claimant does not satisfy the Listings requirement for an affective disorder.  See 20 C.F.R. § 404, subpart P, app. 1, § 12.04(B).

Substantial evidence also supports ALJ Rowe's finding that the claimant retained the residual functional capacity to perform the full range of medium work.  (R. at 12).  The regulations define "medium work" as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).  Additionally, when determining a plaintiff's residual functional capacity, the ALJ must consider all relevant evidence regarding the plaintiff's physical and mental abilities, pain, and other limitations to determine whether the plaintiff has the ability to adjust to work in the national economy.  20 C.F.R. § 404.1545(a); Killings v. Commissioner of Social Security, No. 15 Civ. 8092, 2016 WL 4989943, at *12 (S.D.N.Y. Sept. 16, 2016).  Dr. Paredes, Mr. Claudio's treating physician, opined that he had some mild physical limitations due to his impairment and could continuously lift or

carry up to twenty pounds, frequently carry twenty-one to fifty pounds, and occasionally lift or carry over fifty pounds, figures that are well within the physical exertion range for medium work. (R. at 230); see 20 C.F.R. § 416.967(c). Dr. Paredes found that the plaintiff could use his hands or feet continuously, and that he had no limitations as to activities of daily living. (R. at 232-33). ALJ Rowe accorded Dr. Paredes' opinion great weight due to his long-term treatment of Mr. Claudio. (R. at 13). Under the regulations, the opinion of a treating physician concerning the nature and severity of an impairment is given controlling weight by the court if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)(alteration in original)(quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ also gave "considerable" weight to the opinion of consultative examiner Dr. Sharon Revan (R. at 12), who found that Mr. Claudio had a normal stance and gait, could squat fully, and did not require any assistance changing or getting on and off the examination table. (R. at 219). Dr. Revan did not indicate any deficits aside from mild limitations climbing stairs due to fatigue. (R. at 219). The opinion of Dr. Revan largely corroborates that of the plaintiff's treating physician, Dr. Paredes. Dr. Revan found only mild limitations climbing stairs,

20

and no limitations as to speech, vision, hearing, or fine and gross motor activity. (R. at 220). While Mr. Claudio complained of lower abdominal pain on palpation, there were no abdominal bruits, hepatosplenomegaly, or masses, and his bowel sounds were normal. (R. at 219). As ALJ Rowe found, Dr. Revan's opinion is consistent with both her examination results and Mr. Claudio's own self-reported activities. (R. at 13).

Objective medical evidence also supports the ALJ's residual functional capacity determination. Mr. Claudio has had CD4 and viral load tests every several months since his HIV diagnosis in 2010, all indicating that his HIV is asymptomatic and under control. (R. at 239-41).

Moreover, the ALJ's decision is supported by the plaintiff's own testimony and his statements in the functional report he completed. Mr. Claudio stated that he lived alone, prepared his own meals, and cared for a dog, although he expressed feeling heavy fatigue that limited his ability to sit, stand, or walk for long periods. (R. at 121-25). Mr. Claudio testified that his HIV was under control. (R. at 26). When asked if there was "anything that's keeping [him] from work," he responded, "No, not really." (R. at 25). ALJ Rowe properly considered all of the relevant evidence in the record, as well as the plaintiff's subjective opinion about his pain and symptoms, to determine his residual functional capacity, and the ALJ's determination that Mr. Claudio

21

is capable of performing the full range of medium work is supported by substantial evidence.

Finally, substantial evidence supports ALJ Rowe's ultimate determination at step five that Mr. Claudio was capable of performing a significant number of jobs in the national economy, and therefore is not disabled. (R. at 13-14). In the absence of any past relevant work, the ALJ properly considered the plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical Vocational Guidelines (the "Grids") found in 20 C.F.R. § 404, subpart P, app. 2, and concluded that there were jobs existing in significant numbers in the national economy which Mr. Claudio could perform. (R. at 13).

A straightforward application of the Grids shows that there are approximately 2,500 separate sedentary, light, and medium unskilled occupations, each occupation representing numerous jobs in the national economy suitable for someone with Mr. Claudio's characteristics. See 20 C.F.R. § 404, subpart P, app. 2, § 203.25. Mr. Claudio was twenty-six years old when he filed his SSI application, which places him in the "younger individual" age category under the Commissioner's regulations, see 20 C.F.R. § 416.963(c), and he falls into the "limited education" category, having completed the eleventh grade, see 20 C.F.R. § 416.964(b)(3). Finally, the ALJ properly determined that Mr. Claudio retained the residual functional capacity to perform the full range of medium

work, as discussed above. Given these factors, the ALJ correctly relied on Grid rule 203.25, and determined that there were numerous occupations suitable for Mr. Claudio. (R. at 13-14).

Conclusion

For the reasons set forth above, I recommend that the Commissioner's motion for judgment on the pleadings (Docket No. 10) be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, Room 1310, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 13, 2016

Copies mailed this date:

Ruben Claudio
830 Amsterdam Avenue
#1E
New York, NY 10025

Brandon M. Waterman, Esq.
Assistant U.S. Attorney
86 Chambers Street
3rd Floor
New York, NY 10007